[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this matter, the parties intermarried on October 9, 1971 at Carmel, New York. The plaintiff has resided continuously in the State of Connecticut for at least twelve months next preceding the filing of the complaint. There are two minor children born issue of the marriage: Janine Marie, born May 25, 1975 and Jason Michael, born April 7, 1977. There is one other child who attained his majority during the pendency of this action. The marriage of the parties has broken down irretrievably.
This case has been difficult for the court because of the complicated financial records of the defendant. The defendant was a man obsessed with making money for the purpose of maintaining his family. As a result, he held down two jobs. One at Mark Industries, Inc. in Torrington, Conn., and another one at Vanguard Plastics Corporation in Southington, Conn. At his primary job with Mark Industries, he worked a regular forty hour week at the rate of $18.73 per hour but put in overtime since the beginning of 1992 of up to 25 hours per week. Normally his overtime would probably run between 15 and 16 hours per week. In 1991 his payroll records suggest that he put in up to 17 hours of overtime but that was unusual in that most of his overtime ran 5 to 7 hours per week, except for one week in September where he put in 100 hours. The defendant was a mold maker or die maker in the plastic industry and because of his devotion to his job, was well liked by his employers. The defendant also worked for Vanguard Industries in Southington, Conn., and the payroll records of Vanguard Industries create a problem in what the defendant's true earnings were on this second job. He testified that he made $200 a week salary and CT Page 7962 that he worked on other jobs building molds for Vanguard Industries for use in their business and that he was paid at the rate of $18.00 per hour for building these molds. The $200 salary was for maintenance and repair work done on existing molds. After each job was completed he submitted an invoice based upon the number of hours worked multiplied by the $18.00. It is his contention that the invoice was for $800 representing four weeks' work deducted once per month and every third month it was $1,000, making up the extra week in every three months. However, when his employer, Lawrence Budnick of Vanguard Plastics testified, it was the court's impression that he was paid the $200 independently of the work performed and invoiced to Vanguard Plastics. This was further fortified, or at least it created a problem for the court, in that the defendant submitted as Exhibit 1 a statement from Mr. Budnick that in February of 1992 the defendant earned overtime pay in the amount of $604, in March of 1992 of $784 and in April of 1992 $584. In checking the time sheets of Vanguard, submitted in plaintiff's Exhibit E, the court found that in February of 1992 the defendant billed Vanguard for $2,835 and in March he billed Vanguard for $2,248.50 and in April of 1992 he billed them for $1,500. Had we subtracted the $800 salary from the billed time, February would have netted the defendant $2,035 which is substantially more than the $604 indicated on defendant's Exhibit 1, and had we subtracted $800 for March, that would have netted the defendant $1,448 which is substantially more than $784 listed in defendant's Exhibit 1, and in April he billed them $1,500 which probably would have netted him out $500 if subtracted $1,000 for the third month. In any event, the actual pay records show substantially more paid in those months than the overtime alleged by Mr. Budnick and submitted in defendant's Exhibit 1.
Going by the defendant's financial affidavit we find that the defendant did average $1,299.05 per week. Annualizing the $1,299.05 per week would have given him an annual income of $67,550.60 which based upon the exhibits submitted would be his minimum earnings. The court has gone through the mathematical gymnastics as hereinbefore set forth because it was obvious the defendant was trying very hard to minimize what his income was so as to cut down on any awards that might be made relative to alimony and support and, also, as far as the distribution of the marital estate might be concerned.
In any event the amount of work and the hours put in by the defendant had a very negative impact on his family life. As a result of his work habits, the family lived rather well but without a strong father image at home. The defendant admitted that he worked at least 6 days a week and that on Sunday he slept late because it was the only day he had a chance to catch CT Page 7963 up on his sleep. This resulted in a minimal amount of time being spent with his wife and children. There are other problems with the marriage. Early on, while the wife was pregnant with her first child, they had a spat and he made statements to her relative to the fetus which upset her. The wife claimed that when she was pregnant with the youngest child, she went to look for her husband at work on one occasion and found him on the Berlin Turnpike with another woman. He denied any intimacy with the woman, although she testified that was not how she observed it. About half way through their marriage, she alleges she found out that he was seeing a young woman whom he bowled with and that they had been intimate and in fact had stayed together overnight. For the first part of the marriage, and actually well into the marriage, the plaintiff was a housewife and remained at home raising the children. During the last several years she has finally broken with her role as a homemaker and has gone to work. As a result of her working, she finds that she had missed a lot in life and has made new friends to the extent that the defendant now accuses her of having had affairs with other men since she has been working.
The parties had purchased a home in Southington, Conn., which is a rather substantial home. There has been a major dispute over the value of the home. The plaintiff brought in appraisals of approximately $190,000 and the defendant brought in an appraisal of $225,000. Since the breakup, the defendant has moved out of the home and purchased a new home in Torrington, Conn., which is currently appraised for $145,000. This is somewhat below the purchase price of $165,000. The defendant actually stipulated that he paid $167,284 for the house. The defendant has living with him a female friend whose name was on the mail box but whom he claims now stays there only on weekends. There is no question that the Torrington house, because of the way it has been financed and mortgaged, has at this point in time a negative value relative to the marital estate.
In spite of the fairly large earnings of the defendant and the plaintiff's current earnings of $485 per week, the parties have managed to run up considerable debts indicating that they do not have good financial/management skills. On top of the fact that there is considerable indebtedness, the parties indicate very little in the way of savings accounts or any kind of investments. The plaintiff shows a $100 checking account and a $25 savings account. The defendant shows $505 in savings and a checking account of $856. The only asset other than the homes involved is the husband's 401K plan of $20,215 plus some cars which do not seem to have a lot of equity. The major asset, as a result of all of this, is the family home at 22 Pine Drive, Southington, Conn. CT Page 7964
After going through all the documents relative to income, the court has found that during the current year, 1992 up to the date of the hearing in mid-July, that the defendant had earned roughly $1,700 plus per week gross and the plaintiff earned $485 per week gross. When these figures are computed out under the child support guidelines, the defendant's obligation for the total child support of the two minor children would be approximately $540 per week. The plaintiff would have a 22% share of that obligation and the defendant at 78% share, or the plaintiff would be responsible for $118.80 per week and the defendant $421.20 per week for the two minor children. The payment should be allocated as follows: $116.20 per week for the oldest child and $305 per week for the youngest child. This would continue the support in accordance with the guidelines after the oldest child attains majority, which will be less than a year, and the youngest will attain majority in approximately 3 years.
As for the rest of the marital assets, there is some liability on both sides for the breakdown of the marriage and the court feels that the plaintiff should retain 60% of the marital assets versus 40% for the defendant. Although the defendant was a hard worker and did contribute a larger portion to the marital estate, it seems that his neglect of the family was a major factor in the destruction of the marital relationship. Since the savings of each party is actually minimal, the court will not involve itself with the splitting of those particular assets. The only assets to be split are really the family home at 22 Pine Road in Southington and the 401K in the name of the defendant.
Using the of $190,000 as the fair market value of the marital home, there is a total equity of $146,362. Giving the defendant 40% of the equity would give him $58,545 and plaintiff $87,817. Applying the same percentages to the 401K plan, the plaintiff would be entitled to $12,129 and the defendant $8,086. If we leave the plan alone and allow the defendant to retain the full plan, then the plaintiff would be entitled to a credit of $12,129 against the defendant's equity in the house which would reduce his equity to $46,415. Accordingly, the court will order that the defendant quit-claim all of his right, title and interest to the plaintiff in the premises at 22 Pine Drive, Southington and that the defendant will receive from the plaintiff a mortgage in the principal amount of $46,415 at 8% per annum, which mortgage shall become due and payable when the youngest child reaches age 18 or in the event plaintiff remarries or no longer uses the premises at 22 Pine Drive, Southington, Conn., as her principal home for her and the children or in the event the plaintiff cohabits with another party, or sells the property. The defendant will retain all of CT Page 7965 his right, title and interest in the property at 118 Upper Valley Road, Southington. The parties will each retain whatever interests they have in the motor vehicles in the family, with the understanding that at least one motor vehicle should be in the plaintiff's name. It is the court's understanding that the plaintiff has a 1991 Chevy Cavalier in her name, which will remain hers, and the defendant has a 1991 Chevy Cavalier which shall remain his. Each party shall be responsible for payment on the outstanding loans against the cars. The GEO truck will remain in the name of the defendant and the 1990 GTZ Barretta shall remain in the name of the defendant, although driven by the son, unless the defendant wishes to make a gift of it to the son or otherwise transfer it to him.
The plaintiff will have sole custody of the minor children with reasonable rights of visitation in the defendant father.
The defendant shall maintain health insurance for the benefit of the minor children and all unreimbursed medical, dental, orthodontic, psychiatric expenses shall be divided in the same ratio of 60% to the defendant and 40% to the plaintiff in accordance with their relative abilities to pay. The defendant is to purchase an additional $50,000 term life insurance naming the two minor children as irrevocable beneficiaries until the youngest child reaches the age of 18. The plaintiff shall maintain the minor child Jason as a dependent for federal and state tax purposes and the defendant shall maintain the minor child Janene as a dependent for federal and state tax purposes.
The defendant shall pay to the plaintiff the sum of $350 per week as periodic alimony for a period of three years. At the end of three years the alimony will be decreased to $250 per year for a period of 3 years and at the end of the sixth year, the alimony will decrease to $175 per week for a period of four years, at which time all obligations for alimony shall terminate. Alimony will terminate in any event if the plaintiff remarries before the expiration of the ten year period.
The court will find that there is an arrearage due the plaintiff from the defendant in the amount of $2800 and the defendant shall be entitled to a credit on the two mortgage payments of $370.57 each, making the net total arrearage $2,184.86. This arrearage should be paid within 90 days of the date hereof.
The defendant will also be held responsible for taxes due on the tax year of October 1989 and 1990 to the extent of 60% of said taxes, the other 40% will be paid by the plaintiff. CT Page 7966
The defendant is further ordered to refile his 1990 and 1991 federal and state tax returns with the appropriate exemptions and deductions.
The defendant shall further return to the plaintiff within ten days from the date hereof her ceramics and a black leather jacket. The defendant is further ordered to pay to the plaintiff the sum of $5,000 towards the plaintiff's attorney's fees. The plaintiff and her attorney will have to work out payment of the balance. The defendant is further ordered to pay 60% of the balance due to Tonya Shamoo, therapist for Janene.
It is difficult to ascertain which of the outstanding liabilities are for bills incurred during the term of the marriage so that the court will order that the parties each be responsible for the liabilities on the retail accounts as shown on their respective financial affidavits and the defendant shall remain liable for the home equity loan for the new roof in the approximate amount of $2,200.
Accordingly, the marriage is dissolved in accordance with the above orders.
Kline, J.